# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| NICHOLAS WADE SPILLERS, ET AL. | * | CIVIL ACTION NO.  11-2163 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| CHEVRON U.S.A. INC., ET AL. | * | MAG. JUDGE KAREN L. HAYES |

## <u>MEMORANDUM RULING</u>

Before the undersigned magistrate judge, on reference from the district court, is a motion to remand [doc. # 19] filed by plaintiffs Nicholas Wade Spillers, et al.[1]  Removing defendants Chevron U.S.A., Inc., et al., oppose the motion.  The defendants have also filed a motion to strike an affidavit attached to the plaintiff's motion to remand.  Doc. # 25.  Plaintiffs oppose this motion.  For reasons stated below, the motion to strike is **DENIED**, and the motion to remand is **GRANTED**.

## BACKGROUND

Plaintiffs filed the instant suit on August 22, 2011, in the Fourth Judicial District Court, Ouachita Parish.  *See* Petition, Doc. # 1-1.  The petition alleges that several tracts of land in which the plaintiffs have various property interests have been contaminated or otherwise damaged by defendants' oil and gas exploration.  *See id.*  They seek compensatory damages, punitive damages, remediation of the affected lands, and, alternatively, unjust enrichment

---

[1] As this motion is not one of the motions excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court.  Any appeal must be made to the district judge in accordance with Rule 72(a) and LR 74.1(W).

damages.  *Id.* pp. 24-25.

On December 16, 2011, defendants removed this matter to federal court on the sole basis of diversity jurisdiction.  Doc. # 1.  Of the ten (10) plaintiffs joined in the action, nine (9) are Louisiana citizens.  *Id.* at p. 5.  The remaining plaintiff is PDS Lands, LLC ("PDS Lands"), a Louisiana limited liability company comprised of three members, two of whom are citizens of Louisiana and one of whom, Ryan Spillers, is a citizen of the State of California.  Doc. # 19-1, p. 5.  Plaintiffs' petition identifies eleven (11) defendants, including Chevron U.S.A., Inc., and Union Oil Company of California, a subsidiary of Chevron Corporation (collectively "Chevron"), both of whom are citizens of California.  *Id.*  Another defendant is River Bend Energy Corporation ("River Bend"), a citizen of Louisiana.  *Id.*  Thus, there is not complete diversity between the parties.  However, defendants argued that both PDS Lands and River Bend were improperly joined because plaintiffs cannot establish a cause of action either on behalf of PDS Lands or against River Bend.  Doc. # 1, p. 5-9, 12-13.  Plaintiffs disagreed with defendants' assessment of their claims on behalf of PDS Lands and against River Bend, and on January 13, 2012, filed the instant motion to remand on the basis of lack of subject-matter jurisdiction.[2]  Doc. # 19.

On February 3, 2012, the defendants filed oppositions to the motion to remand, arguing that PDS Lands and River Bend were joined in the suit for the sole purpose of defeating diversity.  *See* Docs. # 24, 26, 27.

Also on February 3, 2012, the defendants filed a motion to strike an affidavit attached to

---

[2] Plaintiffs do not contest that the amount in controversy exceeds the requisite jurisdictional minimum.  *See* 28 U.S.C. § 1332.  Furthermore, it is facially apparent that the amount in controversy does exceed the requisite jurisdictional minimum.  *See* Doc. # 1, p. 14; *Gebbia v. Wal-Mart Stores, Inc.*, 223 F.3d 880, 883 (5th Cir. 2000).

the plaintiff's motion to remand.  Doc. # 25.  The motion to strike argues that the affidavit is inadmissible because it is not based on personal knowledge, and because it constitutes summary-judgment-type evidence which may not be considered in a motion to remand.  Doc. # 25-1.  The plaintiffs oppose the motion.

The matter is now before the court.

## LAW AND ANALYSIS

### I. Improper Joinder

#### A. Standard of Review

The diversity jurisdiction statute presupposes a civil action between "citizens of different states," where all plaintiffs are diverse from all defendants.  28 U.S.C. § 1332; *Farrell Const. Co. v. Jefferson Parish, La.*, 896 F.2d 136, 139-40 (5th Cir. 1990).  To circumvent the patent lack of diversity between plaintiff PDS Lands and the California defendants, and between the Louisiana plaintiffs and River Bend, defendants invoke the improper joinder doctrine.  The improper joinder doctrine affords a "'narrow exception' to the rule of complete diversity, and the burden of persuasion on a party claiming improper joinder is a 'heavy one.'"  *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (citing *McDonal v. Abbott Laboratories*, 408 F.3d 177, 183 (5th Cir. 2005)).  To establish improper joinder, the removing party must demonstrate "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."[3]  *McDonal*, 408 F.3d at 183 (citing *Travis v.*

---

[3] The vast majority of the cases discussing the improper joinder doctrine concern the improper joinder of a defendant.  However, the Fifth Circuit has expressly recognized that the joinder of a non-diverse plaintiff should not be allowed to defeat diversity jurisdiction.  *See In re Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir. 2002); *infra* Sec. I(B).  For present purposes, any reference to an improperly joined defendant should be read to include the possibility of an improperly joined plaintiff.

*Irby*, 326 F.3d 644, 647 (5th Cir. 2003)).

In the case *sub judice*, there are no allegations of actual fraud.  *See* Def's Opp. to Mot. to Remand, Doc. # 24, p. 8.  Accordingly, the court must determine whether the removing defendants have demonstrated that plaintiffs have "no possibility of recovery" against the non-diverse defendant, *i.e.* that there is "no reasonable basis" for the district court to predict that the plaintiff might recover against him.  *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 571 (5th Cir. 2004) (en banc).  In order to determine whether a plaintiff has demonstrated a reasonable possibility of recovery, the district court may either conduct an analysis under Rule 12(b)(6) of the Federal Rules of Civil Procedure — inquiring whether the complaint states a claim against the non-diverse defendant upon which relief can be granted — or the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.  *Menendez v. Wal-Mart Stores, Inc.*, 364 Fed. App'x 62, 69 (5th Cir. 2010) (quoting *Smallwood*, 385 F.3d at 573).  However, when a court chooses to conduct a summary inquiry, the court must consider "all unchallenged factual allegations" in the light most favorable to the plaintiff.  *Travis*, 326 F.3d at 649.  Furthermore, "any ambiguities in state law" must be resolved in favor of the plaintiff."  *Id.*  Finally, "the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case."  *Smallwood*, 385 F.3d at 573.

### B. Improper Joinder of River Bend

#### 1. Motion to Strike

In the defendants' motion to strike, they ask that the court strike the affidavit of plaintiffs' expert, Greg Miller.  This affidavit, which was attached to the plaintiffs' motion to remand, testifies that several large, open, and unlined pits are in existence on the subject property, and

4

that the existence of these pits violates Louisiana Statewide Order 29-B, which required the closure and clean-up of such pits by January 21, 1989.  Doc. # 19-6.  It also asserts his opinion that a pit complex on the property is likely causing contamination of the property.  *Id.*  In preparing the affidavit, Miller reviewed the aerial photographs and operator history attached to the petition, as well as ground level photographs of the property in question.  *Id.*  A subsequent affidavit, attached to plaintiffs' reply to defendant's opposition to the motion to remand, shows that Miller personally visited the property on March 12, 2012, and inspected the pits and facilities thereon.  *See* Doc. # 34-1, pp. 1-4.  Miller testifies in this second affidavit that the information set forth in the first affidavit was verified by his first-hand observations.  *Id.*  Further, he testifies that the pit complex in question is in violation of Statewide Order 29-B because it 1) was never registered with the Louisiana Department of Natural Resources (LDNR); 2) was not closed by January 21, 1989, in compliance with the cleanup standards imposed by Order 29-B; and 3) to this day contains drilling mud residues and abandoned oilfield debris.  *Id.*  Photographs depicting the pit complex are attached to the affidavit.  *Id.* pp. 5-11.

The defendants' motion to strike, as well as their reply to plaintiffs' opposition to the motion, argue that the affidavits provide summary evidence which is inadmissible under *Smallwood*, *supra*.  They further argue that the affidavits are not based on personal knowledge and offer inadmissible legal conclusions.

In *Smallwood*, the Fifth Circuit explained the two methods by which a federal court can analyze the improper joinder issue:

> There has been some uncertainty over the proper means for predicting whether a plaintiff has a reasonable basis of recovery under state law. A court may resolve the issue in one of two ways. The court may conduct a Rule 12(b)(6)-type analysis,

> looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6)-type challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.

*Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir.2004) (en banc).  Therefore, "a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant."[4]  *Id.* at 573-74.  The court is not permitted to "mov[e] beyond jurisdiction and into a resolution of the merits."  *Id.* at 574.  Nevertheless, "[*Smallwood*] and its progeny have explicitly allowed limited discovery in determining improper joinder . . . ."  *Ameen v. Merck & Co., Inc.*, 226 Fed. App'x 363 (5th Cir. 2007) (approving the introduction of deposition testimony where "the district court would have been unable to appreciate fully the basis for its possible jurisdiction without [it].").  During this summary inquiry, "[t]he party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper."  *Id.* at 574.

Here, the defendants argue that the affidavits presented by the plaintiffs do not offer such "discrete and undisputed facts," but rather are a belated attempt to fashion a claim against River Bend.  The undersigned disagrees and finds that the factual assertions in the affidavit and attached photographs — in particular that open pits and oilfield debris exist on the property — represent discrete and undisputed facts which bear directly on the plaintiffs' chance of recovery

---

[4] The court provided several examples of the type of inquiry appropriate under a pierce-the-pleadings inquiry: "For example, the in-state doctor defendant did not treat the plaintiff, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that can easily be disproved if not true." *Id.* at 574 n. 12 (citing *Travis v. Irby*, 326 F.3d 644, 648-49 (5th Cir. 2003)).

against the non-diverse defendant.  The Fifth Circuit has stated that "[*Smallwood*] sharply limits,

but does not eliminate, discovery.  To do so would deny all substance to the pierce-the-pleading

option that we have repeatedly sanctioned."  *Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 311

(5th Cir, 2005) (upholding the district court's piercing of the pleadings when the parties had

conducted ten months of post-removal discovery).  Therefore, the limited facts presented in the

affidavits will be considered in the undersigned's analysis of the motion to remand.

It is true, as the defendants point out, that the affidavits contain several legal conclusions,

including the proposition that state environmental regulations have been violated.  However, the

undersigned will only rely on the factual assertions in the affidavit.  Thus, the pleadings will be

pierced for the limited purpose of considering the affidavits as evidence that there existed oilfield

debris as well as open, unlined, and unregistered pits on the property in question.  To this extent,

the motion to strike the affidavits is DENIED.[5]

### 2. Plaintiffs' Claim Against River Bend

Plaintiffs' claim against defendant River Bend arises under a 1991 assignment of three

mineral releases to River Bend.  The petition, motion to remand, and attached exhibits establish

that River Bend was assigned an interest in leases encumbering the property plaintiff-lessors

contend has been contaminated.  *See* Docs. # 1-1; # 19-1, # 19-7.  The filings essentially allege

that by way of the assignment, River Bend assumed "several onerous remediation obligations"

associated with the property, in addition to the obligations imposed by the Louisiana Mineral

---

[5] The defendants' claim that the affidavits are not based on personal knowledge also fails. The first affidavit shows Mr. Miller reviewed photographs and the operator history of the property, and in the second affidavit, Miller affirms that he visited the property and verifies that the facts in the original affidavit were true and accurate based on his personal observations. *See* Doc. # 19-6. Doc. # 34-1. Thus, the documents contain "enough factual support to show that the affiant possesses [personal] knowledge." *Amie v. El Paso Independent School Dist.*, 253 Fed. App'x 447, 451 (5th Cir. 2007).

Code.  *See* Doc. # 19-1, p. 6.  The defendants counter that plaintiffs have pointed to only one

well on or near the acreage subject to the assigned leases, and that this well was plugged and

abandoned nine years before River Bend acquired its interest.  Doc. # 24, p. 11.  The defendants

also argue that the plaintiffs have failed to plead any other theory of liability with the required

specificity.  *See id.* pp. 12-14.

The Louisiana Mineral Code and the Louisiana Civil Code govern a lessee's obligations

under a mineral lease.  *Marin v. Exxon Mobil Corp.*, No. 2009–C–2368 (La. 10/19/10); 48 So.3d

234, 255 (citing La. Rev. Stat. § 31:2).  Louisiana Mineral Code article 122 provides:

> A mineral lessee is not under a fiduciary obligation to his lessor, but he is bound to
> perform the contract in good faith and to develop and operate the property leased as
> a reasonably prudent operator for the mutual benefit of himself and his lessor. Parties
> may stipulate what shall constitute reasonably prudent conduct on the part of the
> lessee.

La. Rev. Stat. § 31:127.  Further, a mineral lease may be assigned or subleased in whole or part.

§ 31:127.  Mineral Code article 128 provides that "to the extent of the interest acquired, an

assignee or sublessee acquires the rights and powers of the lessee and becomes responsible

directly to the original lessor for performance of the lessee's obligations."  § 31:128.

In addition, the Louisiana Civil Code defines the lessee's principal obligations as follows:

> The lessee is bound:
>
> (1) To pay the rent in accordance with the agreed terms;
>
> (2) To use the thing as a prudent administrator and in accordance with the purpose
> for which it was leased; and
>
> (3) To return the thing at the end of the lease in a condition that is the same as it
> was when the thing was delivered to him, except for normal wear and tear or as
> otherwise provided hereafter.

La. Civ. Code art. 2683.  Furthermore, Civil Code article 2686 provides "[i]f the lessee uses the

thing for a purpose other than that for which it was leased or in a manner that may cause damage

to the thing, the lessor may obtain injunctive relief, dissolution of the lease, and any damages he may have sustained."  Civil Code article 2687 directs that "[t]he lessee is liable for damage to the thing caused by his fault or that of a person who, with his consent, is on the premises or uses the thing."  Finally, Civil Code article 2692 provides "[t]he lessee is bound to repair damage to the thing caused by his fault . . . and to repair any deterioration resulting from his . . . use to the extent it exceeds the normal or agreed use of the thing."

In this case, Unocal Exploration assigned to River Bend all of its rights, title, and interest in five oil and gas leases, three of which are at issue in this suit:

1) 8/18/60 Sampson Tedeton Lease

2) 8/18/60 Mary Lou Petty Lease

3) 8/18/60 N.S. Spillers Lease

*See* 1991 Assignment, Doc. # 19-7.  The lease interest assigned to River Bend for the Petty and Spillers leases encompassed only "that acreage lying within the geographic confines of the Purdy SU B, created by the Officer of Conservation Order 746-C."  *Id.*

Despite the defendants' objections, the plaintiffs have indeed alleged that an open pit or pit complex exists on the property in which River Bend acquired a leasehold interest by way of the 1991 assignment.  Doc. # 19-1, p. 9.  But a preliminary question exists as to whether River Bend owes any obligations to the plaintiffs under the assigned leases at issue.  The petition states that "Defendants who are assignees or sublessees of the mineral leases at issue are liable to plaintiffs under the provisions of article 128 and 129 of the Mineral Code[,]" and that "defendants have violated the express and implied obligations of surface leases."  *See* Doc. # 1-1, ¶¶ 24, 27.  But the plaintiffs have not identified any specific lease provision that has supposedly been breached; indeed, the defendants contend that none of the assigned leases contain any

provisions requiring restoration.[6]  *See* Doc. # 24, p. 13.

Not only have the plaintiffs not pointed to any provision of the lease requiring restoration, they have not even shown that they are the lessors as to the property on which the allegedly contaminating pit complex is situated.  This pit complex is purportedly on the border between the Tedeton property, in which no plaintiffs herein have an interest, and the Charles Spillers property, owned by plaintiffs Charles and Teresa Spillers.  *See* Doc. # 19-1, p. 9; Petition, Doc. #1-1, pp. 4-6, 31.  However, it appears that the portion of the Charles Spillers property on which the pit complex supposedly lies is not covered by the leasehold interest conveyed to River Bend in the 1991 assignment, since it is located outside of the "geographic confines of the Purdy SU B."[7]  And although this limitation did not apply to the Tedeton lease, the Tedeton lessors are again not parties to this suit.  Therefore, the plaintiffs in this case have no interest as either owners or lessors in the property at issue, and they do not argue otherwise.

The plaintiffs instead argue that River Bend's liability arises not from the underlying leases, but from the 1991 assignment itself.  Since they were not parties to this agreement, they claim the assignment contained a provision making them third party beneficiaries and vesting them with a claim for restoration damages.  The plaintiffs point to the following language from paragraph 3(a) of the assignment:

> As additional consideration for ASSIGNOR transferring the Assigned Interests[,] ASSIGNEE shall . . . assume and be responsible for and comply with all duties and obligations of ASSIGNOR, express or implied, **with respect to the Assigned Interests** including, without limitation, those duties and obligations arising under or by virtue of any lease, contract, agreement, document, permit, applicable statute

---

[6] The three leases subject to the 1991 assignment are part of the record in this case.  *See* Doc. # 1-2, pp. 2-8; Docs. # 19-2, 19-3, 19-4.  Unfortunately, they are almost entirely illegible.

[7] This can be seen by comparing the property descriptions in the petition, *see* doc. # 1-1, pp. 4-6, the aerial photograph attached to the petition, *see* doc. # 1-1, p. 31, and the map showing the boundaries of the assigned leases and the relevant unit, *see* doc. # 24-2.

or rule, regulation or order of any government authority (specifically including, without limitation, any governmental or lessor request or requirement to plug, replug and/or abandon any well of whatsoever type, status or classification or to take any clean-up or other action **with respect to the Assigned Interest**, including but not limited [sic], the removal of all Wells and Appurtenances located thereon); and . . . **with respect to the Assigned Interests** . . . defend, indemnify and hold ASSIGNOR harmless from any and all . . . suits, claims, demands, causes of action, liabilities, damages, penalties, settlements, and judgments of any kind or character . . . asserted against ASSIGNEE and/or ASSIGNOR . . . .  ASSIGNEE shall defendant, indemnify and hold ASSIGNOR harmless from any and all claims in favor of any person for . . . damage to property or to the environment, or for any other relief, arising directly or indirectly from, or incident to, the use, occupation, operation, maintenance or abandonment of any of the Assigned Interests, or condition of the property or premises, whether latent or patent, and whether arising from or contributed to by the negligence in any form of ASSIGNOR, its agents, employees, or contractors, and asserted against ASSIGNEE and/or ASSIGNOR . . . .

Doc. # 19-7, pp. 3-4 (emphasis added).

It is true that this clause contains language similar to that which Louisiana courts have

deemed to confer benefits to third parties.  *See, e.g., Andrepont v. Acadia Drilling Co.*, 231 So.2d

347 (1969) (finding that a condition in a mineral lease stipulated an enforceable benefit in favor

of a person not a party to the lease); *Hazelwood Farm, Inc. v. Liberty Oil and Gas Corp.*, No.

01-0345-CA (La. App. 3 Cir. 6/20/01); 790 So.2d 93 (same).  Nevertheless, even if the 1991

assignment did confer such a benefit, this benefit was not in favor of the plaintiffs in the instant

action.  The above-quoted clause patently limits the obligations assumed by River Bend to the

extent of the assigned leasehold interest.[8]  In other words, if River Bend did have any obligation

to remediate the pit complex area by way of the assignment, this obligation would effectively end

at the property line separating the Charles Spillers property from the Tedeton property.  For this

reason, the undersigned finds that the plaintiffs have no reasonable possibility of recovery against

defendant River Bend.  Thus, the defendants have met their burden of establishing improper

_____

[8] This limitation simply affirms the Louisiana Mineral Code's rule that an assignee or sublessee assumes the lessee's obligations only "to the extent of the interest acquired[.]"  La. Rev. Stat. § 31:128.

joinder as to this defendant.

This result does not dispose of the plaintiffs' motion, however, because the undersigned must still consider whether the non-diverse plaintiff, PDS Lands, has been improperly joined in this matter.  If not, then the lack of diversity will defeat federal jurisdiction, requiring remand of the action to state court.

### C. Improper Joinder of PDS Lands

"The fraudulent joinder doctrine can be applied to the alleged fraudulent joinder of a plaintiff." *Miller v. Home Depot, U.S.A., Inc.*, 199 F.Supp.2d 502, 508 (W.D. La. 2001) (citing several sources).  In such a case, "[t]he defendants have the burden of establishing that there is no possibility that the [non-diverse] plaintiff can establish any claim against them." *Id.* (citing *Elk Corporation of Texas v. Valmet Sandy–Hill, Inc.*, No. CIV.A. 3:99–CV–2298G, 2000 WL 303637 (N.D. Tex. Mar. 22, 2000)).  In other words, "in applying the fraudulent joinder analysis to a non-diverse plaintiff, . . . the focus of the analysis is not whether there is any possibility of recovery against one particular defendant, but whether [the allegedly improperly joined plaintiff] has a reasonable possibility of recovering at all." *Clear Channel Communications, Inc., v. Citigroup Global Markets, Inc.*, 541 F. Supp. 2d 874, 878 (W.D. Tex. 2008).

In the notice of removal, the defendants argued that PDS Lands had no cause of action for damage to property occurring before they acquired an interest in that property.  *See* Doc. # 1, pp. 6-8.  The defendant's argument, however, contained the caveat that PDS Lands might have a claim if the plaintiffs could show that PDS Lands was expressly assigned and/or subrogated to the rights of the previous owners of the property it acquired.  *Id.* pp. 7-8.  Alternatively, the defendants alleged that the citizenship of PDS Lands was designed for the sole purpose of defeating diversity jurisdiction.  *Id.* pp. 8-9.  When the plaintiffs filed the motion to remand with

12

the attached assignment, showing that PDS Lands acquired the right to sue for environmental contamination, the defendants adopted their alternative argument.  *See* Doc. # 24, p. 3.  Thus, the defendants now do not actually argue that PDS Lands lacks any possibility of recovery against any of them.  Rather than attacking the substance of PDS Lands' claim, they ask the court to infer some sort of fraud on the part of the plaintiffs.  They point out that PDS Lands, LLC, was assigned an interest in the property at issue shortly before the suit was filed, and when plaintiff Paul Spillers donated an interest in the LLC to his son Ryan, a California citizen, this donation had the effect of destroying diversity.  For this reason, the defendants' argument takes the form of a "collusive assignment" claim.

Unlike improper joinder, the collusive assignment doctrine allows the court to consider the plaintiff's motive to manipulate federal jurisdiction.  *See Minogue v. Modell*, No. 1:06CV286, 2006 WL 1704932, *4 (N.D. Ohio Jun. 16, 2006).  This doctrine arises from 28 U.S.C. § 1359, which provides that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

Interpreting Section 1359, the Supreme Court in *Kramer v. Caribbean Mills*, 394 U.S. 823 (1969), examined a plaintiff's motive when considering whether an assignment could be used to manufacture diversity jurisdiction. In *Kramer*, Caribbean Mills was a Haitian corporation that entered into a contract with Panama and Venezuela Finance Company, a Panamanian corporation.  *See id.* at 824.  After unsuccessfully seeking payment on the contract, the Panamanian corporation assigned its interest to Kramer, a Texas attorney, for consideration of $1.  *Id.*  In addition, Kramer agreed to pay 95% of any net recovery he obtained under the contract to the Panamanian corporation "solely as a bonus."  *Id.*  Shortly thereafter, Kramer sued

Caribbean Mills in federal court, and Caribbean Mills challenged the assignment under Section 1359.  Kramer argued that the underlying legality of the assignment exempted it from judicial review under Section 1359.  *Id.* at 829.

The Supreme Court ultimately held that "to accept [Kramer's] argument would render § 1359 largely incapable of accomplishing its purpose; this very case demonstrates the ease with which a party may 'manufacture' federal jurisdiction by an assignment which meets the requirements of state law."  *Id.*  Thus, the Court considered Kramer's motivation to defeat diversity jurisdiction and disregarded the assignment.  *Id.*

Although Section 1359, and *Kramer* by extension, only reference attempts to *create* federal jurisdiction, subsequent cases have applied the collusive joinder doctrine to situations where a plaintiff uses an assignment to *defeat* jurisdiction.[9]  The defendants here heavily rely on one of these cases, *Grassi v. Ciba-Geigy*, 894 F.2d 181 (5th Cir. 1990).  In *Grassi*, the plaintiffs had obtained a default judgment against Ciba-Geigy PLC in Texas state court.  *Id.* at 182.  When they were unable to enforce the judgment, the plaintiffs sued Ciba-Geigy PLC's parent company, a Swiss corporation.  *Id.*  Before doing so, however, the plaintiffs assigned a 2% interest in their claim to a Costa Rican corporation.  *Id.*  After removal, plaintiffs filed a motion to remand, arguing diversity jurisdiction was destroyed since foreign parties were on both sides of the dispute.  *Id.*  Relying on *Kramer*, the Fifth Circuit affirmed the district court's denial of remand, finding that "federal district courts have both the authority and the responsibility, under 28

---

[9] It should be noted at the outset that "[t]he Supreme Court has not yet spoken as to whether the lower federal courts have correctly read the *Kramer* case as authorizing application of its principles to attempts by plaintiffs to defeat federal diversity jurisdiction." *Louisiana v. Sprint Communications Co., L.P.*, 892 F. Supp. 145, 149 n. 4 (M. D. La. 1995) (emphasis omitted).  Moreover, Congress has never enacted legislation prohibiting the use of devices to defeat federal jurisdiction that would parallel Section 1359's prohibition on diversity-creating devices.  *See* C. Wright, A. Miller, & E. Cooper, Fed. Prac. and Proc. Juris. § 3641 (3d ed.).

U.S.C. §§ 1332 and 1441, to examine the motives underlying a partial assignment which destroys diversity and to disregard the assignment in determining jurisdiction if it be found to have been made principally to defeat removal." *Id.* at 185.

Here, Paul Spillers has declared in an affidavit that he created the LLC in 2000 in connection with his purchase and operation of a farm, partly for purposes of limitation of liability. Doc. # 19-14, ¶¶ 1-3. Another reason he created the LLC was so that he could donate membership interests to his two children for estate planning and tax purposes. *Id.* ¶ 3. On August 9, 2011, Spillers used the LLC to acquire from his sister, nephew, and nephew's wife a five percent interest in eight of the twenty-three tracts at issue in this suit. *See id.* ¶ 5; 2011 Assignment, Doc. # 19-10; Petition, Doc. # 1-1. PDS Lands paid five hundred dollars for the assignment, Doc. # 19-10; additionally, Spillers noted in his affidavit that the assignment was "in part, in recognition of PDS Lands, LLC, providing management advice and assistance to my sister and nephew." Doc. # 19-14, ¶ 5. Then on August 10, 2011, Spillers donated a five percent membership interest to each of his two children, Ryan and Sarah Spillers, for estate planning purposes due to his advancing age and the lengthy nature of these types of cases. *See id.* ¶ 3; *see* Doc. # 34, p. 7. The plaintiffs filed suit on August 22, 2011. *See* Pet., Doc. # 1-1.

Thus, citing *Grassi*, the defendants point to the facts that the assignment to PDS Lands occurred thirteen days before suit was filed, and that the assignors retained a ninety-five interest in the lawsuit. *See* Doc. # 24, p. 12. The instant case, however, can be distinguished from *Grassi*. First of all, the interest assigned to PDS Lands was not an interest in a claim but rather an interest in real property. The *Grassi* court was clearly concerned with the implication of misconduct when an interest in an actual claim is assigned on the eve of filing suit. *See Grassi*, 894 F.2d at 185 (noting that "[the right of removal] would be an illusory one indeed if a plaintiff

could defeat it by the simple expedient of assigning a fractional interest in the outcome of the suit

to an agent performing what is essentially litigation support on a contingent fee basis.").

*Grassi*'s extension of Section 1359 and *Kramer* stands on much stronger ground when viewed in

this light.

The analogy to Section 1359 and *Kramer* also weakens when the assignment itself does

not destroy diversity.  Here, when Louisiana plaintiffs Nicholas Wade Spillers, Lindsey Martin

Spillers, and Bobby Spillers Staples assigned a five percent interest in a portion of the land at

issue to PDS Lands, diversity was still intact.  It was only later, albeit a day later, when Ryan

Spillers acquired an interest in PDS Lands, that diversity was destroyed between the LLC and the

California defendants.

In other words, then, it is not the assignment of the land that defendants challenge as

destroying diversity; it is plaintiff Paul Spillers' donation to his son Ryan of the interest in the

LLC.  One federal court in California has found that *Grassi*'s holding should not extend to such a

situation.  *See Plush Lounge Las Vegas, LLC v. Lalji*, No. CV 08-8394-GW, 2010 WL 5094238

(C.D. Cal. Dec. 7, 2010).  In *Plush Lounge*, the plaintiff LLC sued several defendants, two of

which were Nevada citizens.  *Id.* at *1.  After removal, the LLC filed a motion to remand and

attached information showing that its managing member, also an LLC, had a Nevada citizen as

one of its members.  *Id.*  The defendants relied on *Kramer* and its line of cases to argue that the

Nevada citizen had been assigned an interest in the LLC in order to defeat diversity.  *See id.* at

*3.  The court rejected this argument, finding that "[e]ven if the Court were to accept the premise

that the Court may look behind the collusive assignment of a claim in order to find diversity . . . ,

it would require a quantum leap in logic to conclude from this that it can examine the motivation

behind the assignment of an interest in an LLC (or the addition of a diversity destroying new

member into the LLC)."  *Id.* at *4.

A similar result was obtained in *Equant, Inc., v. Unified 2020 Realty Partners, L.P.*, 2012 WL 1033644 (N.D. Tex. Mar. 27, 2012).  In *Equant*, the Texas federal court considered whether a defendant had collusively assigned an interest in a limited partnership in order to defeat diversity.  *See id.* at *2.  The court declined to decide whether to extend *Grassi* to such a situation, but noted that the courts that have found collusive assignments have done so based on conduct that relates to an actual claim.  *Id.*  It also noted that "[t]he assignment of a claim is more indicative of a party's colluding to destroy federal jurisdiction because it is more closely linked to the litigation itself."  *Id.*  The plaintiff in *Equant* presented the court with circumstantial evidence of the defendants' fraudulent motives, such as the timing of the transaction and the small interest conveyed.  Nevertheless, the court found that "[a]lthough the circumstantial evidence permits the inference that the [challenged] transactions could have been motivated by [defendant's] desire to litigate in state court, [plaintiff] has not shown that the [transactions] were made "*principally* to defeat [diversity].'"  *Id.* (quoting *Grassi*, 894 F.2d at 185 (emphasis preserved)).

Considering the foregoing, the undersigned declines to extend *Grassi*, and thus further extend Section 1359 and *Kramer*, to the types of transactions in this case.  But even if the court were to question the motives behind the transactions, the defendants would not meet their burden to prove the transactions were made principally to defeat diversity.  Again, the proffered reason for the initial assignment to PDS Lands is that it was done in recognition of Paul Spillers' history of handling business and litigation matters for the family.  *See* Doc. # 34, p. 7.  It was also paid for in the amount of five hundred dollars.  Doc. # 19-14.  And as for the donation to Ryan Spillers, the plaintiffs contend that due to Paul Spillers' advancing age and the potential length of this case, he decided to begin transferring his interest in PDS Lands to his children.  *Id.* pp. 7-8. Considering the defendants' burden of demonstrating federal jurisdiction, both of these reasons

are credible enough to survive the court's scrutiny.

Of course, there may certainly be situations where transactions like the ones here are more clearly intended to defeat diversity.  But in this case, where plausible reasons were offered, the transactions were between close family members, and the only real evidence offered by the defendants is the timing of the transactions and the small interest conveyed, the undersigned is unwilling to infer improper conduct on the part of the plaintiffs.[10]  For these reasons, the defendants have not met their burden to establish that removal jurisdiction exists on the basis of diversity, and the motion to remand is GRANTED.

## CONCLUSION

Accordingly,

The motion to remand [doc. # 19] filed by plaintiffs Nicholas Spillers, et. al., is hereby **GRANTED**.  In addition, the defendants' motion to strike the affidavit of Greg Miller [doc. # 25] is hereby **DENIED**.

**THUS DONE AND SIGNED** at Monroe, Louisiana, this 2nd day of August, 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

---

[10] The defendants also request, in the event the court finds a lack of diversity with PDS Lands, that they be allowed to conduct discovery on the motives behind the transactions at issue. However, since the undersigned has determined that *Grassi*, *supra*, should not apply to  the circumstances of this case, such discovery into the plaintiffs' motives will not be permitted.